IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

SAFE STEP WALK-IN TUB CO., )
a Tennessee corporation, and )
MICHAEL DUFFER, )
)
    Plaintiffs, )
) Case No. 3:13-cv-00489
v. ) Senior Judge Haynes
)
GREENWORKSUS, )
a California corporation, )
)
    Defendant. )

## MEMORANDUM

Plaintiffs, Safe Step Walk-in Tub Co. ("Safe Step") and Michael Duffer ("Duffer"), Tennessee citizens, filed this action under 28 U.S.C. § 1332, the federal diversity jurisdiction statute against the Defendant GreenworksUS ("Greenworks"), a California citizen.[1] Plaintiffs' claims arise from the parties' contract and, as such, Plaintiffs contend that those claims are subject to arbitration under that contract.

Before the Court is Plaintiffs' motion to compel arbitration (Docket Entry No. 7). Previously, Plaintiff filed a motion to lift stay and grant motion to compel. (Docket Entry No. 22). This Court granted Plaintiff's motion to lift stay (Docket Entry No. 31), and set a status conference to address the motion to compel arbitration. Following the June 27, 2014 status conference in this action, the Court identified the sole issue as whether Defendant Greenworks' claims against Plaintiff Duffer are subject to mandatory arbitration. Duffer contends that he was a signatory to the parties' contract as Safe Step's agent, and that he is covered by the arbitration provision in that contract. Greenworks

---

[1] The Defendant filed an earlier action against Plaintiffs in the Northern District of California, but that action is stayed pending resolution of this action. (Docket Entry No. 29-1).

concedes that its claims against Safe Step are covered by the arbitration clause in the parties' contract, but contends that, because Duffer did not sign the contract in his individual capacity, he cannot compel arbitration of the claims brought against him personally.

**A. Review of the Record**

On or about July 1, 2010, Safe Step and Greenworks entered into a written Dealership/License Agreement, effective July 5, 2010. (Docket Entry No. 1, Petition to Compel Arbitration at ¶ 12). This Agreement contains a mandatory arbitration clause, providing that:

> Any controversy, dispute or claim arising out of, in connection with or otherwise relating to any provision of this Agreement, or to the breach, termination or validity hereof or any Transaction, contemplated hereby (any such controversy, dispute or claim being referred to as **"Dispute"**), shall be finally settled by arbitration conducted expeditiously in accordance with the Commercial Arbitration Rules then in force, the **"AAA,"** with application of the following procedural requirements. A single arbitrator (the **"Arbitrator"**) shall be appointed by the AAA. The Arbitrator's conduct shall be governed by the current version of the Code of Ethics for Arbitrators in Commercial Disputes that has been approved and recommended by the AAA and the American Bar Association.
>
> The situs for arbitration pursuant to this Section shall be as agreed to by the parties, failing which it shall be Davidson County, Tennessee.

(Docket Entry No. 1-4, Dealership/License Agreement at 9) (emphasis in original).

Plaintiff Duffer signed this Agreement as President of Safe Step and on Safe Step's behalf. Id. at 14; see also Docket Entry No. 9, Declaration of Stuart Hall.

**B. Conclusions of Law**

Arbitration agreements are, fundamentally, contracts. Thus, courts review the enforceability of an arbitration agreement according to the applicable state law. See Byrd v. SunTrust Bank, No. 2:12-cv-2314, 2013 WL 3816714, *5 (W.D. Tenn. Jul. 22, 2013) (citing Hergenreder v. Bickford

Senior Living Grp., LLC, 656 F.3d 411, 415 (6th Cir. 2011)). Yet, the Federal Arbitration Act ("FAA") reflects a strong federal policy in favor of arbitration. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Accordingly, any doubts regarding arbitrability must be resolved in favor of arbitration. Burden v. Check Into Cash of Kentucky, LLC, 267 F.3d 483, 488 (6th Cir. 2001). Moreover, this federal policy favoring arbitration is taken into consideration even in applying ordinary state law. Walker v. Ryan's Family Steak Houses, Inc., 400 F.3d 370, 377 (6th Cir. 2005).

Here, the parties' contract does not contain a choice-of-law provision, but this contract issue is governed by Tennessee law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); see also Perry v. Thomas, 482 U.S. 483, n. 9 (1987). "[T]he cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention as best can be done consistent with legal principles." Cummings Inc. v. Dorgan, 320 S.W.3d 316, 333 (Tenn. Ct. App. 2009). "The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern." Planters Gin Co. v. Fed. Compress & Warehouse Co., 78 S.W.3d 885, 890 (Tenn. 2002). Thus, courts ascertain the parties' intention from what was "actually embodied and expressed in the instrument as written." Petty v. Sloan, 277 S.W.2d 355, 361 (Tenn. 1955).

Under Tennessee law, "[w]hen an agency relationship has been established, the principal may be bound by the acts of the agent performed on the principal's behalf and within the actual or apparent scope of the agency." Creech v. Addington, 281 S.W.3d 363, 373 (Tenn. 2009) (citing White v. Revco Discount Drug Centers, Inc., 33 S.W.3d 713, 723 (Tenn. 2000)). Here, it is undisputed that Duffer signed the Dealership/License Agreement with Greenworks as an agent

3

"acting on behalf of Plaintiff Safe Step." (Docket Entry No. 1-2, Cross-Complaint in Arbitration at ¶¶ 3, 23).

Generally, nonsignatories cannot compel arbitration. Bowie v. Clear Your Debt, LLC, 523 Fed. App'x 315, 317 (6th Cir. 2013); Benton v. Vanderbilt University, 2003 WL 1627029,*9, (Tenn. Ct. App. Mar. 31, 2003), aff'd, 137 S.W.3d 614 (Tenn. 2004). Yet, "nonsignatories may be bound to an arbitration agreement under ordinary contract and agency principles." Crossville Medical Oncology, P.C. v. Glenwood Systems, LLC, 310 Fed. App'x 858, 860 (6th Cir. 2009) (quoting Javitch v. First Union Securities, Inc. 315 F.3d 619, 629 (6th Cir. 2003)); see also Broaddus v. Rivergate Acquisitions, Inc., No. 3:08-0805, 2008 WL 4525410,*2 (M.D. Tenn. Oct. 1, 2008) (concluding that "Plaintiff, by agreeing to arbitrate with the 'Company,' agreed to arbitrate with its agent and subsidiary corporation . . ."). Underpinning this rationale is the notion that, "if a party can avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as defendants in his complaint, the effect of the rule requiring arbitration would, in effect, be nullified." Arnold v. Arnold Corp.– Printed Communications for Business, 920 F.2d 1269, 1281 (6th Cir. 1990).

In Arnold, the Sixth Circuit held that, because "the nonsignatory defendants are alleged to have committed acts related to their running of the corporation," the directors would also be required to arbitrate. 920 F.2d at 1282. Specifically, the Arnold court found it critical that "[a]ll of these alleged wrongful acts relate to the nonsignatory defendants' behavior as officers and directors or in their capacities as agents of the Arnold Corporation." Id.; see also James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Management, LLC, No. 5:11-374, 2014 WL 1281475, *8 (E.D. Ky. Mar. 27, 2014) (concluding that "because the plaintiffs' fraud claim and accounting claim

sufficiently relate to the defendants' alleged actions taken on behalf of, or in concert with, Walmac Stud and Jones, the defendants may invoke the arbitration provision of the COA."); Patteson v. McAdams Tax Advisory Group, LLC, No. 09-2085Ma/P, 2010 WL 711161, n. 6 (W.D.Tenn. Feb. 14, 2010) (noting that "the allegations establish that there is a clear and close nexus between Gibson and McAdams and that Patteson's claims arise in large part out of Gibson's alleged conduct.").

In addition, the Sixth Circuit, in Arnold, concluded that the clear intent of the arbitration provision was to provide a single arbitral forum to resolve all disputes and that, because all of the alleged wrongful acts of the nonsignatory defendants related to their behavior as officers and directors or in their capacities as agents of the Arnold Corporation, the trial court properly determined that claims against the nonsignatory agents were subject to arbitration. 920 F.2d at 1282.

Here, the mandatory arbitration clause at issue provides that "[a]ny controversy, dispute or claim arising out of, in connection with or otherwise relating to any provision of this Agreement, or to the breach, termination or validity hereof . . . shall be finally settled by arbitration . . ." (Docket Entry No. 1-4, Dealership/License Agreement at 9). In its cross-complaint, Greenworks asserts a fraud claim against both Duffer and Safe Step. (Docket Entry No. 1-2, Cross-Complaint in Arbitration). Specifically, Greenworks alleges that Duffer, "acting on behalf of Safe Step" made representations with the intention of luring Greenworks into entering into the Dealership/License Agreement. Id. at ¶¶ 23-24. Greenworks also asserts, in its fraud claim, that both "Duffer and Safe Step did not intend to honor the aforementioned representations once they found other dealers to enter into agreements," and that both "Duffer and Safe Step knew that at the time they made the aforementioned representations that they were false or were being made without sufficient information to accurately make the aforementioned representations." Id. at ¶¶ 26-27.

5

Thus, the Court concludes that Greenworks' claims against Duffer both arise from his alleged wrongful acts as an agent of Safe Step and relate to the underlying agreement between Safe Step and Greenworks. Accordingly, Duffer should be afforded "the benefits of arbitration agreements made by [his] principal." Arnold, 920 F.2d at 1282.

Neither party cites to a decision in which a Tennessee state court has addressed the issue of whether an agent, who signs a contract in his representative capacity, may compel arbitration of claims brought against him as an individual. Yet, because Greenworks' claims against Duffer arise out of his alleged wrongful acts as an agent of Safe Step and relate to the underlying agreement between Safe Step and Greenworks, the Court adopts the reasoning of the previously cited cases. See Bowie, 523 Fed. App'x 315 (6th Cir. 2013); Javitch, 315 F.3d 619 (6th Cir. 2003); Arnold, 920 F.2d 1269 (6th Cir. 1990); James T. Scatuorchio Racing Stable, 2014 WL 1281475 (E.D. Ky. Mar. 27, 2014); Patteson, 2010 WL 711161 (W.D. Tenn. Feb. 14, 2010); Broaddus, 2008 WL 4525410 (M.D. Tenn. Oct. 1, 2008).

In response, Defendant contends that, in Lowrey v. Tritan Group Ltd., this Court held that an officer of a corporation who signs an agreement containing an arbitration clause on behalf of the corporation in his representative capacity cannot compel arbitration of claims brought against him individually. No. 3:08-cv-00779, 2009 WL 2136159 (M.D. Tenn. July 14, 2009). In Lowrey, the plaintiff asserted several claims, including violations of the Tennessee Consumer Protection Act and Tennessee Contractor's Licensing Act, against various defendants involved in the construction of the plaintiff's home. Among the defendants were Tritan Group Ltd. and its officer, Bruce Most. Lowery entered into a contract with Tritan Group Ltd. that contained a mandatory arbitration clause. Most signed this contract on behalf of Tritan Group Ltd.

Specifically, Defendant contends that this Court held that Most could not invoke the arbitration clause of the Tritan-Lowery contract. See Docket Entry No. 35, Defendant's Supplemental Memorandum in Opposition to Petitioners' Motion to Compel Arbitration at 3. To be sure, the Court did deny the defendants' motion to compel arbitration. Yet, the language that Defendant relies upon is found in a footnote, in which the Court notes that, under the general rule that nonsignatories to an arbitration agreement lack standing to enforce the agreement, Most could not invoke the arbitration clause found in the Tritan-Lowrey contract. See id. at n. 2. Instead, the Court based its holding in Lowrey on the undisputed fact that neither Most nor Tritan Group Ltd. was ever licensed as a contractor under the Tennessee Contractor's Licensing Act. As a result, because Tennessee law prohibits any person, firm, or corporation from engaging in contracting without a license under the Tennessee Contractor's Licensing Act, and because providing that contracting without a license is an unfair and deceptive act or practice under the Tennessee Consumer Protection Act, the Court concluded that the Lowery-Tritan arbitration agreement was unenforceable as contrary to Tennessee public policy. See id. at *3. Thus, the Court does not interpret the holding of Lowrey as contrary to the proposition that nonsignatories may enforce an arbitration agreement under ordinary contract and agency principles.

Accordingly, the Court concludes that Plaintiff's motion to compel arbitration (Docket Entry No. 7) should be granted.

An appropriate Order is filed herewith.

ENTERED this the 15th day of May, 2015.

WILLIAM J. HAYNES, JR.
Senior United States District Judge